FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

24 MAR 27  PM 3: 16

CLERK_____
SO. DIST OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

JONATHAN C. DAVIS,                          *
                                            *
        Plaintiff,                          *
                                            *
    v.                                      *       CV 322-145
                                            *
TELFAIR COUNTY, through its Commission      *
Chair Edwin Neal, in his official           *
capacity;                                   *
                                            *
FORMER SHERIFF CHRIS STEVERSON,             *
individually;                               *
                                            *
The following deputies in their             *
individual capacities:  CHIEF BILLY         *
JOHNSON, CAPT. KYLE CARVER, LT. TERRY       *
MOON, STAFF SGT. FUSSELL, SQT. ALISA        *
ZANDERS, ELEANOR POWELL, NICHOLAS           *
HULETT, GARY BATTLE, ROBINSON FLOYD,        *
ANTHONY RILEY; SAMANTHA CLEMENTS,           *
JUSTIN TOLER, and SGT. DESTIN CLEMONS,      *
                                            *
HOSPITAL AUTHORITY OF DODGE COUNTY          *
d/b/a Dodge County Hospital;                *
                                            *
        Defendants.                         *

_____

O R D E R
_____

On October 21, 2022, Plaintiff Jonathan C. Davis initiated

this civil case.  On July 24, 2023, the Court addressed the County

Defendants'[1] motion to dismiss the amended complaint, which had

been filed on December 9, 2022.  Through the Order of July 24,

_____

[1] "County Defendants" refer to all captioned Defendants except
Defendant Hospital Authority of Dodge County.

2023, the Court dismissed the first count of the complaint based upon the applicable statute of limitations. (Doc. No. 43.) The Court also dismissed all official-capacity claims against individual County Defendants and dismissed several named individual County Defendants outright. The Court then directed Plaintiff to file a second amended complaint to correct noted deficiencies.

On August 11, 2023, Plaintiff filed the Second Amended Complaint ("SAC"), which is now the operative complaint in the case. (Doc. No. 47.) The individual Telfair County Commissioners, Deputy McRae, and Sheriff Sim Davidson, who were previously named in the case, are not named in the SAC and therefore are **DISMISSED** from the case. The Clerk is therefore directed to **TERMINATE** the following parties: (1) Edwin Neal, (2) Annie Williams, (3) Jason Boone, (4) Jason White, (5) Dakkia Bradshaw, (6) Officer McRae, and (7) Sheriff Sim Davidson. Defendants The Southland Medical Group, Dingane Baruti, MD, and Dr. FNU Goberdahan were dismissed from the case on September 28, 2023.[2] (Doc. No. 71.) These defendants shall no longer be listed in the case caption.

Now pending before the Court is the County Defendants' partial motion to dismiss the SAC. Plaintiff has responded, and the County

---

[2] Only Dr. Baruti and Southland were actually named in the Second Amended Complaint.

Defendants have filed a reply brief.   The matter is ripe for resolution.

## I.    The Second Amended Complaint

At the outset, the Court notes that the SAC is much improved from the standpoint of Federal Rule of Civil Procedure 8(a) and (d).   The case involves Plaintiff's claims for deprivations of federal constitutional rights under 42 U.S.C. §§ 1983 and 1985(3) arising out of his period of incarceration at the Telfair County Jail from September 18, 2020, to March 4, 2021.   The SAC is organized as follows:   (1) claims arising out of the violent assault of Plaintiff by another inmate on October 21, 2020 (Counts 1 through 5); (2) a claim arising out of Defendants' ongoing failure to provide adequate medical care for the injuries he received during the assault (Count 6); (3) claims arising out of Defendants' ongoing failure to provide necessary prescription medication to Plaintiff during his incarceration (Counts 7 and 8); (4) a claim arising out of Defendants' deliberate indifference to a serious medical need for Plaintiff's injured leg (Count 9); (5) a claim against Telfair County for overall denial of adequate medical care to the inmates of Telfair County Jail (Count 10); (6) a claim against Dodge County Hospital under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd (Count 11); and (7) a claim against Telfair County for medical costs incurred

3

after Plaintiff was released from Telfair County Jail on March 4, 2021 (Count 14).[3]

Defendants' motion to dismiss attacks three different aspects of the SAC. First, Defendants contend that Plaintiff has failed to adequately plead a cause of action against Telfair County in Counts 5 and 10 of the SAC. Second, Defendants contend that Plaintiff has failed to state a claim of supervisory liability against individual County Defendants in Counts 2, 3, 4, and 8. Third, Defendants contend that Plaintiff has failed to plead supporting factual allegations for the claim against Telfair County in Count 14.

## II. Standard Of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has provided additional guidance to the Rule 8(a) analysis in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Pursuant to the Twombly/Iqbal paradigm, to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[3] Because Defendants Baruti and Southland have been dismissed, Counts 12 and 13 are no longer in the case.

plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true. Id. This same tenet is not applicable to legal conclusions however. Id. at 678, 680.

For a claim for relief to be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." Id. at 679. That is, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Finally, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. LEGAL ANALYSIS

Section 1983 creates a private right of action for the deprivation of federal rights by persons acting under color of state law. 42 U.S.C. § 1983. Thus, to state a claim for relief under 1983, a plaintiff must show that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted). In addition to individual liability claims, a plaintiff may assert claims against supervisory officials, although not based on *respondeat superior* liability or vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Further, a county or municipality may be liable under § 1983, but only if the county or municipality itself caused the constitutional violation at issue. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092m 1115 (11th Cir. 2005). That is, a plaintiff must establish that an official policy or custom of the county or municipality was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 693-94 (1978).

In this case, the County Defendants move to dismiss the supervisory claims against individual officers and the Monell

6

claims against Telfair County.[4]  Plaintiff has asserted such claims in relation to the alleged assault, in relation to the failure to provide necessary prescription medication, and in relation to the alleged universal failure to provide adequate medical care.  The Court will address each of these three areas separately.


A.   The Alleged Assault

The allegations pertaining the alleged assault of Plaintiff by a fellow inmate, identified only as "Footman," are as follows.

In the hours leading up to the assault, Footman was in the day room "acting erratic and assaultive."  (SAC ¶ 25.)  Defendants Justin Toler and Sgt. Destin Clemons personally observed this behavior.   In fact, Footman had been arguing loudly and aggressively with these officers, "inches away from their faces, shouting threats, and balling his fists in a threatening manner."  (Id. ¶¶ 26-28.)  The officers heard Footman threaten to kill or harm others; instead of taking any corrective action, the officers were visibly scared and retreated into the control tower.  (Id. ¶¶ 29-30.)  As it pertains to the assault, Footman believed Plaintiff had taken down a petition that Footman had posted.  (Id. ¶¶ 31-36.)  Footman entered Plaintiff's cell, at which time another

---

[4] There remains a service of process issue with respect to three individual Defendants: Anthony Riley, Samantha Clements, and Sgt. Destin Clemons.  For purposes of this motion to dismiss, the Court will assume that these three Defendants are properly in the case.

inmate pressed the emergency button in his cell to notify the control tower of the looming assault. (Id. ¶ 43.)  The ensuing assault, which may have lasted between 5 and 10 minutes, was visible from the control tower. (Id. ¶¶ 39-40.)  Defendants Toler and Clemons did not respond to the assault of Plaintiff. (Id. ¶ 45.)  Footman kicked and hit Plaintiff repeatedly; one particular blow was struck to his crotch, which caused Plaintiff's penal implant to protrude through the skin from the left side of his penis. (Id. ¶¶ 47-50.)

Counts 1 through 5 relate to this incident.  In Count 1, Plaintiff alleges that Defendants Toler and Clemons were deliberately indifferent to the known substantial risk of harm posed by Footman and failed to address the problem to prevent the assault.  These Defendants also failed to intervene in response to the assault.  This is a direct liability claim that Defendants have not moved to dismiss.

Count 2 names other officers and supervisors of the Telfair County Jail.  Count 2 is labeled as a "Mid-level Supervisory liability" claim, but it contains allegations of the named Defendants' "personal involvement" and their personal observations and conduct.  (SAC ¶¶ 62-67.)  The gist of Count 2 is that the named officers and supervisors had personal knowledge of Footman's erratic and violent behavior in the days and hours prior to the

assault and failed to take corrective action to remove the substantial risk of harm that Footman posed in general population.

Count 3 is a supervisory liability claim against Defendants Sheriff Chris Steverson, Chief Billy Johnson, Captain Kyle Carver, and Lt. Terry Moon.   It alleges that these Defendants had the following policies or customs that led to the assault, namely: "(a) a culture among the jail staff of allowing the inmates to run the jail and commit assaults, (b) allowing assaultive inmates to roam freely throughout the jail, instead of being placed in a single cell or close custody, and (3) understaffing."  (SAC ¶ 69.) Count 4 alleges that Defendants Sheriff Steverson, Chief Johnson and Captain Carver subjected Plaintiff to "a systemic unconstitutional condition of confinement . . . where all inmates, or the subset of inmates likely to be targets of assault, faced a substantial risk of serious injury from inmate-on-inmate assault." (SAC ¶ 92.)  Count 4 further alleges that although these Defendants must have known of the risk of inmate-on-inmate assault, they failed to take corrective measures to reduce that risk.   (Id. ¶¶ 95-96.)

While the County Defendants move to dismiss Counts 2 through 4, the Court concludes that Count 2 is not a supervisory liability claim subject to the instant motion to dismiss; rather, it is an

9

individual liability claim against the named officers for their personal involvement in the events leading up to the assault.[5]

Counts 3 and 4, however, are supervisory liability claims. In reviewing these claims, the Court observes the Eleventh Circuit's admonition that "the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Christmas v. Harris Cnty., 51 F.4th 1348, 1355 (11th Cir. 2022) (quoted source omitted). Absent allegations that a supervisor personally participated in the alleged unconstitutional conduct, there must be "a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone, 326 F.3d at 1360. "To establish the requisite causal connection, a plaintiff must show one of these things: a history of widespread abuse that put the supervisor on notice of the need to correct the alleged deprivation and the supervisor failed to do so, the supervisor adopted an improper custom or policy that led to the deliberate indifference, or the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and

---

[5] Matters pertaining to who knew what and when are better examined at summary judgment after discovery. The Court is only deciding here that if the facts as alleged are true, Plaintiff has stated a claim of individual liability against the named officers for their personal involvement in allowing an erratic and violent inmate to remain in the general population of the Telfair County Jail without intervention or corrective measure.

10

failed to stop them from doing so." Thompson v. Adkinson, 861 F. App'x 806, 810-11 (11ᵗʰ Cir. 2021) (citing Douglas v. Yates, 535 F.3d 1316, 1322 (11ᵗʰ Cir. 2008)).

There are no allegations in either Count 3 or Count 4 to suggest that the named supervisory officials directed their subordinates to allow Footman to run rampant in the jail or to not respond to the assault upon Plaintiff. That means Plaintiff must allege facts supporting an inference that there is a history of widespread abuse that put the supervisors on notice of the need to correct the alleged deprivation or that the supervisors adopted an improper custom or policy that led to the alleged deprivation. In this regard, Plaintiff references his allegations pertaining to "an observable culture of deliberate indifference, failure to separate assaultive inmates, and understaffing such that guards were afraid to confront assaultive inmates." (Pl.'s Resp. Br., Doc. No. 66, at 15-16.) These conclusory allegations, however, are not enough. As the Eleventh Circuit pointed out in Myrick v. Fulton Cnty., Ga., 69 F.4ᵗʰ 1277 (11ᵗʰ Cir. 2023), "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id. at 1298 (quoting Christmas, 51 F.4ᵗʰ at 1355). Moreover, "[d]emonstrating a policy or custom requires showing a persistent and wide-spread practice." Id. at 1299 (quoting Christmas, 51

11

F.4th at 1356); Piazza v. Jefferson Cnty., Ala., 923 F.3d 947, 957 (11th Cir. 2019) ("'A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates].'"). Under these standards, Plaintiff has not pled facts sufficient to meet the rigorous standard of supervisory liability against the named Defendants in Counts 3 and 4.

In Count 3, Plaintiff's allegations purportedly demonstrating a "culture of indifference" reference only circumstances related to Footman. For instance, Plaintiff alleges that Defendants Toler and Clemons were visibly afraid of Footman; that the jail staff laughed and mocked Plaintiff after the incident; that Footman assaulted another inmate after Plaintiff; that it took six Telfair County Sheriff's deputies to take down Footman the day after the incident; that Footman, a convicted felon, was housed in general population; and that the jailers paid cigarettes to other inmates to beat up Footman after the incident. Count 3 does not allege a single other incident of officer fear or abdication of duty, or of another inmate-on-inmate assault, or of flagrant or rampant violence within the inmate population. Plaintiff alleges that the Telfair Jail was understaffed, but aside from the incident with Footman, there are no facts demonstrating this conclusory allegation. Count 4 is no better. Therein, Plaintiff alleges that there is a "systemic unconstitutional condition of

12

confinement" of inmate-on-inmate assaults; but there are no allegations of inmate-on-inmate assault aside from Footman's attacks on Plaintiff and possibly others. In short, Plaintiff has alleged insufficient facts to plausibly state a claim of supervisory liability in either Count 3 or Count 4.

In response, Plaintiff argues that he need not rely upon the supervisory liability framework to establish his claims against the named officials in Counts 3 and 4. He suggests instead the causation standard announced in Farmer v. Brennan, 511 U.S. 825 (1994), which focuses on whether a plaintiff suffered injury as a result of the official's deliberate indifference to a substantial risk of serious harm. Plaintiff's reliance on the Farmer standard is misplaced. The Farmer standard is used in cases with excessive inmate-on-inmate violence claims. See Ogletree v. Colbert Cnty., Ala., 2021 WL 4477630 (N.D. Ala. Sept. 30, 2021). The Farmer standard assesses whether officials "personally participated in the unconstitutional conditions of confinement due to the responsibility wielded by such officials for control and maintenance of the facilities." Id. at *24. The focus is on whether the officials were deliberately indifferent to a serious risk of substantial harm. The problem for Plaintiff is that he has not alleged sufficient facts to demonstrate that any official in a position of control and maintenance of the Telfair County Jail would be aware of a serious risk of substantial harm. As the

13

Eleventh Circuit pointed out in Marbury v. Warden, 936 F.3d 1227 (11th Cir. 2019), a plaintiff must show that "serious inmate-on-inmate violence was the norm or something close to it." Id. at 1234 (quoted source omitted). In fact, the Marbury court required a demonstration of an appreciable rate of assaults, of specific features of the facility or its population, and of pervasive staffing and logistical issues to satisfy the Farmer standard of causation.    Id. at 1234-35.    Here, Plaintiff's conclusory allegations about a single violent inmate and speculative statement that the jail was understaffed fall far short of the circumstances noted in cases concluding that jail conditions were so severe as to pose a substantial risk of serious harm to inmates. Compare cases collected in Ogletree, 2021 WL 4477630, at **27-31. Simply put, Plaintiff has failed to allege facts sufficient to find the "culture of indifference" he claims existed.

Count 5 against Telfair County fails as well.  Count 5 is a Monell liability claim in which Plaintiff seeks to hold the County liable for the conditions of Telfair County Jail that led to his assault.  He claims that it was the County's policy or practice of underfunding the Jail that caused inadequate staffing to prevent inmate assaults.6    (SAC ¶ 98.)

---

6 The Court pauses to note that Plaintiff has alleged no facts to support the notion that Telfair County Jail was understaffed other than perhaps on the day(s) surrounding the alleged assault.  Thus,

14

As previously stated, Plaintiff must show that an official policy or custom of the county was the "moving force" behind the alleged constitutional deprivation. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479-80 (11th Cir. 1991)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007) (citation omitted). The policy or custom requirement is designed to "'distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible*.'" Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (quoted source omitted) (emphasis in original quoted source).

The unconstitutional act, moreover, must have been carried out "pursuant to" the alleged policy or custom. See Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019). That is, a Monell claim requires causation - a showing that "through its *deliberate*

---

Plaintiff's premise that there is a policy, custom, or practice of maintaining an understaffed Jail is factually unsupported.

conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). "To meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its *known and obvious consequences*.'" Brown, 520 U.S. at 407 (emphasis added). Thus, as applied to this case, Plaintiff must allege that Telfair County knew that its budgetary decision would likely result in a greater number of inmate assaults.

The Eleventh Circuit addressed a similar "lack of funding" claim in McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004), wherein the plaintiff claimed a custom of understaffing the jail caused a delay in his medical transport. Therein, the court made clear that in order for a plaintiff to "demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" Id. at 1290 (quoted source omitted). "This prevents the imposition of liability based upon an isolated incident." Id. Within this framework, the McDowell court explained that while there was evidence that the jail had staffing issues, there was no evidence, other than the plaintiff's isolated incident, that the understaffing led to a consistent failure to transport non-emergency medical cases to the hospital. Id. at 1290-91. The McDowell court concluded that linking one unconstitutional incident to a budgetary decision (a decision that is not

16

unconstitutional on its face) is too attenuated to establish municipal liability. Id.

The facts of this case are similar. While Plaintiff links his assault to the budgetary decision of Telfair County, he has not alleged facts to show his is not an isolated incident. That is, there are no allegations of specific other instances of inmate violence caused by understaffing necessary to demonstrate a policy or custom. See McDowell, 392 F.3d at 1283 (stating that a plaintiff cannot rely on a "generalized policy of understaffing"). This failure of the SAC to identify a pattern or practice of assaults linked to Telfair County's alleged understaffing is fatal to his Monell claim.

Moreover, the SAC lacks allegations that Telfair County was on notice of a problem with an understaffed jail and inmate assaults. Rather, with respect to causation, the claim's sole supporting allegation appears in Paragraph 99. Paragraph 99 alleges that Telfair County should have known of the understaffing because of "the demands for funding and discussions with the Sheriff, complaints from the public about the violent conditions at the jail and number of ambulance calls to the jail as the result of fights." Paragraph 99, however, fails to allege supportive *facts*. The Twombly/Iqbal paradigm, which ensures only plausible claims move forward, targets for dismissal naked assertions without well-pleaded supportive facts. This single unsupported

17

allegation of what the County "should have known" is inadequate to show that Telfair County acted deliberately to inadequately staff the Telfair County Jail and thereby cause more inmate assaults. Because Plaintiff fails to allege facts in the SAC to demonstrate that Telfair County acted with deliberate indifference in underfunding the Jail and that this decision was the moving force behind Plaintiff's assault, the Monell claim fails.

Upon the foregoing, the Court will dismiss Counts 3, 4 and 5 of Plaintiff's Second Amended Complaint.

B. Failure to Provide Prescription Medication

The allegations pertaining to the Telfair County Jail's failure to provide prescription medication are as follows.

On Plaintiff's first and second day of detainment at the Telfair County Jail, he was told that no prescription medications would be provided. (SAC ¶ 18.) Plaintiff needed prescription medication for a peptic ulcer, COPD, anemia, and depression/anxiety. (Id. ¶ 151.) Plaintiff's private physician called the Jail every week to explain to the jail staff that Plaintiff needed his medications. (Id. ¶ 152.) Plaintiff was never provided with any of his prescribed medications throughout his incarceration, which caused his serious medical needs to go unmet at substantial risk of harm and unnecessary pain to Plaintiff. (Id. ¶ 153.)

18

In Count 7 of the SAC, Plaintiff details the medical issues he had because of the failure to provide prescription medications. He names Defendants Sheriff Steverson, Chief Johnson and Captain Carver as having personal notice of his serious medical needs and their personal denial of medications. This is a direct liability claim and is not subject to the County Defendants' motion to dismiss. Thus, to the extent that Sheriff Steverson had direct personal involvement in the denial of necessary prescription medication to Plaintiff, the claim will proceed under Count 7.

Count 8, on the other hand, is a supervisory liability claim against Sheriff Steverson only. As previously discussed, a plaintiff may establish supervisory liability by alleging personal participation in the alleged unconstitutional conduct or by alleging a causal connection between the actions of a supervising official and the constitutional deprivation. Cottone, 326 F.3d at 1360.[7] A plaintiff may establish the requisite causal connection by showing that the supervisor adopted a policy or custom that led to the deliberate indifference. Thompson, 861 F. App'x at 810-11.

Count 8 alleges that Sheriff Steverson was responsible for the Jail having a policy or practice of denying any and all

---

[7] As stated, to the extent Count 8 contains allegations of personal participation by Sheriff Steverson, the claim will proceed under Count 7.

19

prescription medication to inmates.   (SAC ¶¶ 171-175.)   Count 7, which is incorporated by reference in Count 8, describes how that policy led to deliberate indifference of Plaintiff's serious medical needs.   Sheriff Steverson moves to dismiss this claim because in his estimation, Plaintiff has not alleged a policy or practice of the Jail since he does not specifically name any other inmate that suffered a similar constitutional violation.

This claim is different from the supervisory allegations in Counts 3 and 4, wherein Plaintiff alleged a policy or custom could be shown through a "culture of indifference," which, in turn, required a showing of more than an isolated occurrence.   Here, Sheriff Steverson is alleged to have implemented an actual **policy** of "complete denial" of prescription medications to **all** inmates. (SAC ¶ 172.)   Plaintiff expressly alleges that no inmate at the Telfair County Jail during his five-month incarceration ever received prescription medication.   He further alleges that there were no medical professionals at the Jail who could dispense prescription medication to the inmates.   Because Plaintiff has alleged that Sheriff Steverson's policy of denying necessary prescription medication affected and was applied to every inmate, Plaintiff has effectively pled a policy of constitutional deprivation.

Upon the foregoing, the Court concludes that Plaintiff has stated a supervisory liability claim against Sheriff Steverson in

Count 8 based upon his all-inclusive policy that no inmate would receive prescription medication necessary to protect him against serious adverse health effects and even substantial risk of death.

Count 10 seeks to hold Telfair County liable for deliberate indifference to Plaintiff's medical needs.  This claim encompasses more than the denial of prescription medication and the attendant harm therefrom that appears in Count 7.   It also seeks to hold Telfair County liable for the constitutional violations involving Plaintiff's medical needs in Count 6, related to the need for specialty care for the injury he sustained from the assault, and in Count 9, related to a separate leg injury.  Plaintiff alleges that the County had a policy of refusing to pay for out-of-town specialty treatment, for prescription medication, and for medical professionals to work at the Jail.  (SAC ¶ 185.)   In support of this claim, Plaintiff alleges that the County Commission and Sheriff Steverson "likely had a discussion and jointly agreed" not to pay for these medical services.  (Id. ¶ 186.)  Plaintiff further alleges that Telfair County "must have known" about these issues from "prior lawsuits" and "because of a Commissioner's comments to the news about the difficulties in providing for medical care at the Jail when he had no medical staff."  (Id. ¶ 189.)

Telfair County moves to dismiss this Monell claim on the same basis as the Monell claim in Count 5; namely, Telfair County argues that the claim should be dismissed because Plaintiff provides "no

specific information that other detainees at the Telfair County Jail" did not receive necessary medical care. (Defs.' Reply Br., Doc. No. 72, at 22.) As just discussed, however, Plaintiff need not allege "specific information" about other detainees because he alleges that there is an actual policy of underfunding medical services applicable to all inmates. He further alleges that at least one Commissioner was well aware of the effect of the County's policy of underfunding. While the factual allegations demonstrating the County's knowledge of and disregard to the medical needs of inmates at the Telfair County Jail are sparse, the Court will allow the claim to proceed as plausible. Accordingly, the Monell claim in Count 10 will not be dismissed.

C.  Failure to Provide Adequate Medical Care

In a single sentence, Count 14 generally alleges that Telfair County is liable for the costs of all related medical care provided to Plaintiff after his release from jail. The allegation provides: "The Defendant County owes for all medical care provided after Plaintiffs (sic) release because the need for treatment was caused while Plaintiff was in the Telfair County jail and state law requires the County to pay." (SAC ¶ 211.) The County moves to dismiss because the claim contains no factual allegations whatsoever. Plaintiff explains in brief that the claim is cognizable under state law as recognized by Bunyon v. Burke Cnty.,

22

306 F. Supp. 2d 1240 (S.D. Ga. 2004). In Bunyon, the undersigned judge noted that Georgia law places the responsibility for an inmate's medical care on the county under O.C.G.A. § 42-5-2. The county in Bunyon, however, attempted to avoid liability for medical expenses by releasing the plaintiff detainee from custody on his way to the hospital. This Court determined that the county's last-minute release of the detainee did not obviate the county's need to pay his medical expenses. Id. at 1262-63 (citing Macon-Bibb Cnty. Hosp. Auth. v. Houston Cnty., 428 S.E.2d 374 (Ga. Ct. App. 1993)). Thus, the Bunyon case stands for the proposition that a county cannot circumvent the state imposition of responsibility for medical expenses by an improvident release of a detainee.

Telfair County moves to dismiss because Plaintiff did not allege facts congruent with the Bunyon case; nor did Plaintiff cite O.C.G.A. § 42-5-2. Plaintiff responds that if the SAC is considered as a whole, taking into account all of the medical care denied by Telfair County and the need for specialized care upon his release *because of* the continued denial of appropriate care while incarcerated, he has stated a claim for medical expenses after incarceration.

A claim for medical expenses during incarceration arises under state statute, O.C.G.A. § 42-5-2; there is no *per se* Bunyon claim. Nevertheless, this Court allowed a detainee to seek medical expenses under the statute after his release only because the

23

county deliberately attempted to avoid liability by releasing the detainee. This was also the factual scenario in the case cited in Bunyon: Macon-Bibb County Hospital Authority v. Houston County. In that case, the county attempted to avoid liability under O.C.G.A. § 42-5-2 by obtaining a court order releasing a comatose detainee. The Georgia Court of Appeals called the court order "an improper attempt to circumvent the county's statutorily imposed responsibility for [the detainee's] care." 428 S.E.2d at 376. Thus, an improvident release is a key factual allegation in imposing liability on a county after release from incarceration.

Upon consideration, the Court concludes that Plaintiff must plead facts congruent with the facts in Bunyon and Macon-Bibb County Hospital Authority to state a claim for medical expenses *outside of incarceration* under state law. The single allegation of Count 14, however, does not contain facts demonstrating an improvident release by Telfair County. Nor does the SAC taken as a whole lead demonstrate the Plaintiff was released to avoid medical expenses. In fact, the SAC contains numerous allegations that Plaintiff was taken to medical providers throughout his incarceration albeit not the ones he believed were necessary.

Because Count 14 lacks sufficient factual allegations to make a claim under O.C.G.A. § 14-5-2 for medical expenses outside of incarceration, this state law claim must be dismissed. That said, the medical expenses incurred by Plaintiff may be an element of

24

damages to the extent they were causally related to his constitutional claims.  This is a matter left to another time.

### IV.  CONCLUSION

The County Defendants' motion to dismiss (doc. no. 56) is **GRANTED IN PART** and **DENIED IN PART.**  Counts 3, 4, 5 and 14 are therefore **DISMISSED.**  The Clerk is directed to docket this Order accordingly and to take careful note of the instructions to terminate the named party defendants on page 2 of this Order. Discovery in the case shall remain stayed until resolution of the service issues mentioned in footnote 4.

**ORDER ENTERED** at Augusta, Georgia, this 27th day of March, 2024.

_____
UNITED STATES DISTRICT JUDGE